# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DENISE M. LORES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18-cv-3910 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| SAILPOINT TECHNOLOGIES, INC., a Delaware Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise Lores alleges that her employer, Defendant SailPoint Technologies, fabricated a host of lies about her to justify putting her on a performance improvement plan, then withheld compensation to which she was entitled, and finally terminated her when she demanded that compensation. Plaintiff asserts four claims in response to Defendant's actions: defamation *per se* (Count I), defamation *per quod* (Count II), and two claims under the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*—failure to timely pay earned compensation (Count III) and retaliatory discharge (Count IV). After Plaintiff originally filed suit in the Circuit Court of Cook County, Defendant removed the action to this Court on June 5, 2018. [1.]

Currently before the Court is Defendant's motion [18] to dismiss Plaintiff's first amended complaint for improper venue under the Federal Arbitration Act, 9 U.S.C. §§ 2-4, and Federal Rule of Civil Procedure 12(b)(3), or, alternatively, to transfer the case to the United States District Court for the Western District of Texas (Austin Division) under 28 U.S.C. § 1406(a). In further alternative, Defendant moves to dismiss Counts I & II under Federal Rule of Civil Procedure 12(b)(6). In addition, Plaintiff has moved to strike [21] sections of Defendant's reply [20] in support of its motion to dismiss. For the reasons set forth below, the Court grants in part and

denies in part Defendant's motion [18] and denies Plaintiff's motion to strike [21]. The Clerk is directed to transfer the case to the Western District of Texas (Austin Division) for all further proceedings.

I. **Motion to Strike**

As a preliminary matter, the Court addresses Plaintiff's motion to strike [21] portions of Defendant's reply brief [20], especially certain facts relevant to the current motion. In her motion, Plaintiff asks the Court to strike (and thus not consider) (1) Defendant's argument that Plaintiff failed to allege special damages in her claim for defamation *per quod*; (2) the Declaration of Matthew F. Prewitt [20-1] attached to Defendant's reply and the documents it seeks to introduce and authenticate [20-2–20-6]; and (3) the sections of the reply [20-1, 3-4] which contain references to the Plaintiff's original verified complaint [1-1, 7-32].

Failure to raise an argument in the first instance constitutes waiver of that argument. *United States v. Dabney*, 498 F.3d 455, 460 (7th Cir. 2007). An argument so waived may not later be raised in a reply brief. *Id.* The purpose of the waiver rule is to avoid unfairness to a non-movant who is denied the opportunity to respond to an issue because the movant raised the issue for the first time only in a reply brief. See *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998).

With regard to Plaintiff's first argument, Defendant responds that Plaintiff put into issue whether she had pled special damages when she asserted that she is not claiming unpaid commissions in her response. [24, at 8.] However, as explained below, because the Court does not reach Defendant's motion to dismiss under Rule 12(b)(6) given its determination that it must transfer this case to the Western District of Texas, the Court denies the motion with prejudice. Likewise, Plaintiff's motion to strike the evidence submitted by Defendant to support the notion that the SCP is a valid enforceable agreement is also stricken, given the Court's conclusion that

Plaintiff has waived that argument. With that, the Court turns to Plaintiff's arguments that Defendant may not reference facts pled in her initial verified complaint.

Plaintiff is mistaken that Defendant may not refer to Plaintiff's initial complaint. As explained below, the Court may consider evidence outside the pleadings in its consideration of a motion to dismiss under Rule 12(b)(3). See Section III(A). And, as Defendant correctly points out, the first complaint was a verified complaint. See [1-1, at 33 (verifying the complaint).] As the Seventh Circuit recently explained, "a verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion. [ ] The verified complaint does not lose its character as the equivalent of an affidavit just because a later, amended complaint, is filed." *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (citation omitted). Because the Court may look to information outside the pleadings, and the Court may treat Plaintiff's initial verified complaint as if it were an affidavit, Defendant may reference it. The Court therefore denies Plaintiff's motion to strike Defendant's references to the complaint and has considered allegations from that complaint in its resolution of the motion to dismiss.

II. **Background**[1]

Plaintiff began working for Defendant as a Sales Engineer in July 2015. [16, ¶ 6.] When she joined, Defendant promised an initial base salary of $133,000 per year, with additional incentive compensation expected to be at least $57,000 per year, for "on-target earnings" of at

---

[1] A court deciding a Rule 12(b)(3) motion must take the allegations in the complaint as true, unless contradicted by the defendant's affidavits. *Nagel v. ADM Investor Servs., Inc.*, 995 F.Supp. 837, 843 (N.D. Ill. 1998). The court also may examine facts outside the complaint to determine if venue is proper. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011).

3

least $190,000. [*Id.*] The Sales Commission Plan (the "SCP") referenced in Plaintiff's employment agreement provided for the manner in which that "incentive compensation" would be calculated and paid. [1-1, ¶ 4; 18-2.][2]

The SCP contains both an arbitration provision and a forum selection provision. [18-2, at 6.] The arbitration provision provides that "[a]ny controversy or claim relating to the SCP that is not resolved after good faith efforts shall be resolved according to the commercial arbitration rules of the American Arbitration Association." [*Id.*] The forum selection provision states "that exclusive venue for litigation involving the enforcement of this Agreement or any rights, duties or obligations under this Agreement * * * shall be in Texas state court in Travis County, Texas, or in a United States District Court located in Travis County, Texas * * *." [*Id.*]

By Plaintiff's account, her work in 2015 and 2016 was exemplary considering the positive feedback she received on her annual reviews and other encouraging feedback she received from her coworkers and superiors. [16, ¶¶ 7-10.] Despite these positive reviews, Plaintiff alleges that Defendant suddenly and inexplicably initiated an adverse employment action against her on May 17, 2017. [*Id.* ¶ 12.] On that date, Plaintiff's direct supervisor, who had only given her positive reviews prior to that point, informed her that she would have to submit to a 60-day Performance Improvement Plan ("PIP"). [*Id.* ¶ 13.] In the alternative, he invited her to leave Defendant voluntarily pursuant to a separation agreement. [*Id.*] Plaintiff's supervisor did not provide any explanation for the sudden reversal in fortune, though he did make an oblique suggestion that it had nothing to do with an incident between Plaintiff and a colleague earlier that year. [*Id.* ¶ 15.]

---

[2] Plaintiff did not move to strike Defendant's inclusion of the SCP [18-2] with its motion to dismiss, and in any event, as explained above, the Court is not limited to the facts of the complaint when determining if venue is proper.

Shortly thereafter, Plaintiff's supervisor emailed her a written PIP along with a proposed separation agreement. [*Id.* ¶ 17.]

Plaintiff alleges that the PIP was filled with pretextual justifications and premised upon "false and libelous statements of fact." [*Id.* ¶ 19.] Similarly, the separation agreement that accompanied the PIP stated that regardless of whether she agreed to the PIP or not, her employment with Defendant would be terminated on May 24, 2017. [*Id.*] If she agreed to the separation agreement and released all of her claims against Defendant, the company agreed to provide her with two months of salary as a severance payment. [*Id.*]

On May 30, 2017, Plaintiff submitted the signed and acknowledged PIP to her supervisor. [*Id.* ¶ 20.] Approximately one week later, on June 5, 2017, Plaintiff through counsel complained that Defendant was acting pretextually and that the fact statements in the PIP were false. [*Id.* ¶ 21.] Plaintiff's counsel also noted that Plaintiff was owed commissions by Defendant. [1-1, at 13 ¶ 21.] Although the PIP expressly contemplated Plaintiff's continued employment until July 30, 2017, [16, ¶ 26], on June 8, 2017, Plaintiff discovered that she had been terminated when she called her now former supervisor and then attempted to log into her employee account. [*Id.* ¶ 28-29.] She received a direct confirmation of her termination the next day when a member of Defendant's IT department sent her an email with a shipping label for her to return her "SailPoint Asset" back to Defendant's headquarters. [*Id.* ¶ 30.]

On May 1, 2018, Plaintiff filed this suit in the Cook County Circuit Court. [1-1, at 7.] On June 5, Defendant removed the case to this Court. [1.] Plaintiff filed an amended complaint on July 11, 2018, which narrowed the case to the four claims currently before the Court. See generally [16]. On August 10, Defendant moved to dismiss the complaint. [18.] That motion was fully briefed on September 24, 2018. [20.] However, on October 15, 2018, Plaintiff moved to strike

significant portions of Defendant's reply [20]. [21.] The Court granted leave to brief the motion, which was completed on November 9, 2018. The Court now resolves the motions.

**III. Motion to Dismiss Pursuant to Rule 12(b)(3)**

**A. Legal Standard**

Defendant requests that the Court dismiss the case under Federal Rule of Civil Procedure 12(b)(3). Rule 12(b)(3) allows a defendant to seek dismissal for "improper venue." The plaintiff bears the burden of establishing that the chosen venue is proper. See *Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981) (citing *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1970)). A court deciding a Rule 12(b)(3) motion must take the allegations in the complaint as true, unless contradicted by the defendant's affidavits. *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). The court also may examine facts outside the complaint to determine if venue is proper. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 810 (7th Cir. 2011) ("when ruling on a motion to dismiss for improper venue, [a] district court is not obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings."). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed the complaint initially. See 28 U.S.C. § 1406(a).

**B. Analysis[3]**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts." *Jain v. de Mere*, 51 F.3d 686, 688 (7th Cir. 1995) (citation omitted). The FAA, in relevant part, states:

---

[3] The parties do not appear to dispute that Seventh Circuit precedent provides the rule of decision in this case.

> A written provision in any * * * contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. However, "when a complaint contains both arbitrable and nonarbitrable claims, the [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (per curiam) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)). "To implement this holding, courts must examine a complaint with care to assess whether any individual claim must be arbitrated." *Id.* To determine whether a claim must be arbitrated, the Court must determine that there is (1) a written agreement to arbitrate, and (2) that the dispute falls within the scope of that arbitration agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005).

Plaintiff contests both elements. She asserts that the SCP does not contain a binding arbitration agreement, and that even if it does, the claims in her complaint do implicate the SCP. Given that whether the SCP requires arbitration is irrelevant if Plaintiff's claims do not implicate the SCP, and that interpretation of the SCP can only take place in the Western District of Texas, the Court turns first to whether Plaintiff's claims fall within the scope of the purported provision.

### 1. The Scope of the SCP's Arbitration Provision

Plaintiff asserts that because only the SCP—and not her employment agreement—contains an arbitration clause, her claims are not covered by the SCP because her claims do not involve commissions. Defendant disagrees, pointing to the fact that in her initial complaint, Plaintiff stated that the unpaid compensation in question were commissions, the payment of which is governed by

7

the SCP. Defendant asserts that because each of Plaintiff's claims relates to the payment or non-payment of commissions in some way, Plaintiff must submit to arbitration.

The FAA encapsulates both a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted). But, because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citations and internal quotation marks omitted). Instead, "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Concepcion*, 563 U.S.at 339 (citation omitted).

"To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) and *Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)). "To this end, a court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)). As the Seventh Circuit explained in Gore,

> In Illinois, "the objective in interpreting a contract is to ascertain and give effect to the intent of the parties." *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006) (citation omitted). Most important are "the objective manifestations of the parties, including the language they used in the contract." *Id.* (citation omitted). Where the contract's language is plain, the agreement should be enforced as written. *Id.* (citation omitted).

8

666 F.3d at 1033.

Here, the purported arbitration clause provides, "[any] controversy or claim relating to the SCP that is not resolved after good faith efforts shall be resolved according to the commercial arbitration rules of the American Arbitration Association." [18-2, at 6.][4] Assuming without deciding for the moment that the clause "according to the commercial arbitration rules of the American Arbitration Association" requires arbitration, the language unambiguously requires any controversy "relating to" the SCP to be arbitrated.

The Seventh Circuit has held arbitration clauses containing "relating to" language are "extremely broad and capable of an expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); see also *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905 (7th Cir. 2004) (stating "[it] would be hard to draft a broader clause" in relation to an arbitration clause that covered "all claims 'relating to' an agreement"); *Elzinga & Volkers, Inc. v. LSSC Corp.*, 47 F.3d 879, 881 (7th Cir. 1995) (describing an arbitration clause committing the parties to arbitrate "[a]ny controversy or claims arising out of or related to the Contract" as broad); *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (explaining that language such as "relating to" renders an arbitration clause's scope considerably broader in reach than one limited to disputes "arising out of" certain dealings). In fact, such broad arbitration clauses "necessarily create a presumption of arbitrability." *Kiefer Specialty Flooring*, 174 F.3d at 909-10.

Defendants assert that all four of Plaintiff's claims relate to the SCP because they all in some way hinge on the payment or non-payment of commissions. First, while Plaintiff maintains that this suit only involves "compensation" and not "commissions," the SAC and sworn allegations

---

[4] As previously explained, the Court addresses whether there is a binding arbitration agreement in the next section.

9

in her initial complaint demonstrate that at least some of that compensation consists of commissions. See, e.g., [16, ¶ 110 ("Despite its admission that commissions were still owed, SailPoint failed to pay Ms. Lores her final compensation as defined by the Act even by the July 15, 2017 date.");1-1, at 16 ¶ 39 ("Despite this admission, Defendant SailPoint nonetheless failed and refused to pay Ms. Lores commissions owed to her for sales after the end of April 2017."), 17 ¶ 45 ("because Ms. Lores was wrongfully terminated, at least in part in retaliation for Ms. Lores's demand that she be paid all commissions owed to her upon any termination of her employment, Ms. Lores should be paid commissions for all sales closed in 2017").] Because the SCP governs when and how commissions accrued and provided for the timing of their payment, see [18-2], the Court must conclude that Plaintiff's claims in Count III (failure to pay wages in accordance with the IWPA) and Count IV (retaliatory discharge after attempting to enforce rights under the IWPA) "relate to" the SCP. See, e.g., *Shipp v. XA, Inc.*, 2006 WL 2583720, at *4 (N.D. Ill. Aug. 31, 2006) (concluding that plaintiff's IWPA claim related to a contract between the parties because the principal subject of that claim, the payment of commissions, was governed by the contract).

Plaintiff's claims for defamation *per se* and *per quod* in Counts I & II pose a more difficult question. Defendant asserts that these claims fall under the arbitration provision as well because "the alleged factual predicate for the wrongful discharge and defamation claims is SailPoint's alleged motive to persuade Lores to release her claims to compensation that she earned under the [SCP]." [18-1, at 5.] However, nowhere in Plaintiff's complaint or the first amended complaint does she allege that Defendant's agent made the defamatory remarks to justify her termination and thus avoid paying her commissions. Defendant replies that the only way Plaintiff' will be able to overcome its purported affirmative defense—that the defamatory remarks are subject to a qualified privilege—would be to show that Defendant acted with malice. [20, at 4.] To demonstrate malice,

Defendant asserts that Plaintiff will have to allege that that Defendant "gave her a purportedly false performance review to avoid paying her commissions she was owed under the SCP." [*Id*.]

Without reaching the merits of whether Plaintiff has adequately pled defamation and whether those allegations would directly implicate Defendant's affirmative defense on their face, Defendant's argument is unavailing. Even assuming that Plaintiff would need to allege malice to overcome Defendant's privilege defense, nothing requires her to allege that the malice was Defendant's desire to avoid paying her commissions. In fact, Plaintiff has already provided an alternative explanation, a "pattern and practice of sex discrimination." [19, at 6 n.2.] Nor has Defendant provided, or this Court found, any precedent for sending a claim to arbitration because one of the allegations a plaintiff could put forward in response to a defendant's affirmative defense would implicate the subject matter governed by an arbitration clause. And, in any event, the Court has already concluded that at least one of Plaintiff's claims implicates the SCP's arbitration clause. Thus, Defendant may move to stay this action during the pendency of that arbitration, to avoid being subjected to discovery while simultaneously arbitrating at least one of Plaintiff's claims. See *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970-72 (7th Cir. 2007) (noting it is within the discretion of the district court whether to stay the whole of the litigation or to allow the remainder of the claims to proceed).

Finally, if the arbitration proceedings later demonstrate that the defamation claims do clearly implicate the SCP, Defendant may seek to compel arbitration then. At this point, however, there is simply nothing in the defamation claims that suggest they "relate to" the SCP in any way. Thus, the Court turns to the question of whether there is an agreement to arbitrate.

## 2. The Validity of the Arbitration Clause

Plaintiff argues that even if her claims fall within the purported scope of the arbitration clause, the clause in question does not actually require arbitration.[5] However, answering that question requires interpretation and application of the SCP, which the by terms of the SCP may only be done in Texas. See [18-2, at 6 ("I agree that exclusive venue for litigation involving the enforcement of this Agreement or any rights, duties, or obligations under this Agreement, * * * shall be in a Texas state court in Travis County, Texas, or in a United States District Court located in Travis County, Texas, * * *.")] Plaintiff's only argument to the contrary is that the SCP is not implicated by this suit. But, as explained above, the Court has concluded that at least two of the claims do implicate the SCP. Consequently, the Court must transfer this case pursuant to 28 U.S.C. 1406(a) to the Western District of Texas to determine whether the SCP actually requires arbitration of Counts III & IV.

---

[5] In three sentences of her response, Plaintiff asserts that the Court must deny Defendant's motion because "Sailpoint makes no effort to satisfy its burden of establishing that the SCP is a valid, binding and enforceable agreement. Sailpoint sidesteps this burden by contending that Ms. Lores conceded that the SCP is valid and enforceable Agreement. However, Ms. Lores has not and does not concede these facts." [19, at 2.] Defendant responded to this assertion in its reply, see [20, at 10–14], and Plaintiff moved to strike this response in turn, see [21; 24; 25]. The Court need not address this under-developed argument. See *Black & Decker Inc. v. Robert Bosch Tool Corp.*, 371 F. Supp. 2d 965, 970, 970 n.3 (N.D. Ill. 2005) (concluding plaintiff had waived an argument given it never fully developed the argument in its brief and citing *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n. 1 (7th Cir. 2004)). While Plaintiff thoroughly developed her arguments regarding whether (1) whether the SCP's arbitration provision applies to these claims and (2) whether the SCP's arbitration provisions requires arbitration, she never supports the notion that Defendant failed to meet its burden. Given that Plaintiff failed to develop an argument on which she bears the burden (see *Int'l Travelers Cheque Co.*, 660 F.2d at 222), the argument is waived.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part the Defendant's motion to dismiss [18] and denies Plaintiff's motion to strike [21]. The Clerk is directed to transfer the case to the Western District of Texas (Austin Division) for all further proceedings.[6]

Dated: March 27, 2019

_____
Robert M. Dow, Jr.
United States District Judge

---

[6] Because the Court grants Defendant's primary request to either dismiss or transfer the case under Rule 12(b)(3), it does not reach whether Counts I & II must be dismissed for failure to state a claim under Rule 12(b)(6).

13